UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**GEORGE L. RUSSELL, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

September 21, 2016

MEMORANDUM TO COUNSEL RE:     Sharon E. Sellman v. Secretary Ray Mabus
Civil Action No. GLR-15-3329

Dear Counsel:

Pending before the Court is Defendant's, Secretary of the Department of the Navy Ray Mabus (the "Navy"), Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 7). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

Plaintiff Sharon E. Sellman, an African American female, works for the Navy as a GS-13 Financial Management Analyst at the Naval Air Station Patuxent River in southern Maryland. (Compl. ¶¶ 14, 18, ECF No. 1). Sellman has worked in her current position since March 1997. (Id. ¶ 15). In January 2014, Sellman applied for a GS-14 supervisory position and made the best qualified list with four other candidates. (Id. ¶ 18). Ultimately, however, the Navy selected Susan Mumford, a Caucasian female, for the position. (Id. ¶ 23). Cynthia Burke and Linda Mattingly, both Caucasian females and Sellman's second- and first-level supervisors, respectively, allegedly "discriminated" against Sellman when they "solicited and coached Mumford" to apply for the supervisory position. (Id. ¶¶ 20, 21, 26). On April 21, 2014, Sellman filed a formal Equal Employment Opportunity ("EEO") complaint of discrimination against the Navy, alleging race and age discrimination related to the Navy's decision not to select her for the supervisory position (the "First EEO Complaint"). (Id. ¶ 24). Sellman's First EEO Complaint is currently pending before an administrative law judge in the Baltimore field office of the Equal Employment Opportunity Commission. (Id. ¶ 27).

The Navy scheduled a mediation concerning Sellman's First EEO Complaint to be held on August 21, 2014. (Id. ¶ 29). On or about August 19, 2014, Sellman submitted her timecard for the week beginning Monday, August 18, 2014 and ending Friday, August 22, 2014. (Id. ¶ 30). Sellman recorded twenty-seven hours of regular time for August 18, 20, and 22, and eighteen hours of annual leave for August 19 and 21. (Id. ¶ 31). Sellman recorded annual leave because she planned to attend the mediation on August 21 and meet with her attorney on August 19 to prepare for the mediation.

On Monday, August 25, 2016 at approximately 2:06 p.m., Burke sent Sellman an email requesting that Sellman modify her timecard for the previous week. (Id. ¶ 33). Later that day, at approximately 4:45 p.m., Mumford asked Sellman if she had seen Burke's email, and Sellman indicated she had not because she was busy assisting a program team lead. (Id. ¶¶ 34, 35). Mumford instructed Sellman to replace annual leave with regular time for August 19 and 21 because Navy policy permits employees to charge regular time when preparing for and participating

in EEO mediation. (Id. ¶¶ 36, 37). Because Sellman had already shut down her computer, Mumford adjusted Sellman's time entries for her and then approved Sellman's timecard. (Id. ¶ 38). Mumford also advised Sellman that because Sellman's timecard was not approved before noon, the Navy Enterprise Resource Planning system ("NERP") would charge annual leave for the entire week beginning August 18. (Id. ¶ 39).

According to Sellman, when a supervisor believes a correction to a timecard will be required, the supervisor will approve the timecard "as is" before the noon cutoff and then process a supplemental timecard so NERP does not charge the employee with annual leave for the entire previous week. (Id. ¶ 42). Sellman alleges Burke, Mumford, and Mattingly "colluded" and intentionally did not ask Sellman to correct her timecard until after the cutoff had passed. (Id. ¶ 40). On January 26, 2015, Sellman filed a second formal EEO complaint with the Navy—this time alleging the Navy retaliated against her for filing her First EEO Complaint when Sellman's supervisors permitted NERP to charge Sellman with an entire week of annual leave by not approving Sellman's timecard before the cutoff (the "Second EEO Complaint").

On February 23, 2015, the Navy dismissed Sellman's Second EEO Complaint for lack of timeliness. (Id. ¶ 6). On July 30, 2015, the Office of Federal Operations affirmed the Navy's dismissal. (Id. ¶ 7). On October 30, 2015, Sellman filed suit in this Court, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-1 to 17 (2012). (ECF No. 1). The Navy filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on April 14, 2016 (ECF No. 7). Sellman opposed the Motion on July 18, 2016 (ECF No. 13), and the Navy replied on July 26, 2016 (ECF No. 14).

The Navy styles its Motion as a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md., 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)). Here, both parties attach extra-pleading material to their briefs. In its discretion, the Court will consider this material and construe the Navy's Motion as one for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A).

Once a motion for summary judgment is properly made and supported, the nonmovant has the burden of showing that a genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). If the nonmoving party has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248.

Title VII prohibits discrimination against an employee in retaliation for opposing an employer's illegal discrimination practices or participating in Title VII enforcement proceedings. 42 U.S.C. § 2000e-3(a). The Court analyzes a Title VII retaliation claim using the three-step, burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973). See Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). Under this framework, the plaintiff first bears the burden of proving a prima facie case of retaliation by a preponderance of the evidence. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If a plaintiff successfully presents a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory justification for its action. Id. at 253 (citing McDonnell Douglas, 411 U.S. at 802). Finally, if the employer carries its burden, the plaintiff must show that the employer's legitimate, nondiscriminatory reason is merely a pretext for discrimination. Id. (citing McDonnell Douglas, 411 U.S. at 804).

To prove a prima facie case of retaliation, the plaintiff must demonstrate three elements: (1) "that [s]he engaged in a protected activity," (2) "that the employer took an adverse action against h[er]," and (3) "that a causal relationship existed between h[er] protected activity and the employer's adverse action." Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006) (citing Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004)). An adverse employment action is an action "that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)); see Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999) (explaining that "the typical requirements for a showing of an 'adverse employment action' that can support a Title VII claim" include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion").

The Navy does not dispute that Sellman's act of filing her First EEO Complaint qualifies as protected activity. See King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (explaining that plaintiff's "filing of the EEO complaint was protected activity"). The Navy argues, however, Sellman does not make out a prima facie case of retaliation because she presents no evidence of an adverse employment action. The Court agrees.

Sellman argues she suffered an adverse employment action when, as a result of her supervisors not approving her time until after the cutoff, the Navy charged her annual leave for the entire week beginning August 18, 2014. The Navy offers a declaration from Mumford in which she states that shortly after charging Sellman with annual leave for the week beginning August 18, NERP automatically corrected Sellman's annual leave balance and restored her annual leave. (Mumford Decl. ¶¶ 21, 22, ECF No. 8). Sellman presents no evidence to dispute that the Navy restored her annual leave. Quite to the contrary, Sellman testified that during the week beginning August 25, 2014—just days after NERP charged Sellman with annual leave—the Navy corrected her annual leave balance. (Sellman Dep. 51:6–5:22, Feb. 17, 2016, ECF No. 7-4). What is more, Sellman further testified that the Navy paid her for the week in which NERP originally charged her with annual leave. (Id.).

The Navy's action in charging Sellman with annual leave, but then quickly restoring the leave and compensating her for the time she was charged annual leave, falls well short of the "significant change in employment status" required to show an adverse employment action. See Hoyle, 650 F.3d at 337 (quoting Ellerth, 524 U.S. at 761). Sellman retained her position, leave, and compensation. At most, the Navy's action caused Sellman to experience a "trivial discomfort[] endemic to employment," for which the United States Court of Appeals has concluded Congress did not intend Title VII to provide redress. Boone, 178 F.3d at 256 (4th Cir. 1999). Accordingly, the Court concludes Sellman fails to present a prima facie case of retaliation and will grant the Navy's Motion.[1]

For the foregoing reasons, the Navy's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 7) is GRANTED, and judgment is ENTERED for the Navy. Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly and CLOSE this case.

Very truly yours,

/s/

George L. Russell, III
United States District Judge

---

[1] The Navy also argues Sellman's Complaint is untimely and Sellman fails to show the Navy's legitimate, non-retaliatory reasons for its conduct are a pretext for retaliation. The Court need not address these arguments because Sellman fails to present any evidence that she suffered an adverse employment action.